**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

John Redman

     v.                                    Case No. 21-cv-267-JL

Chris Sununu, Governor of the
State of New Hampshire, et al.

**REPORT AND RECOMMENDATION**

The defendants – the State of New Hampshire ("the State")
and Governor Chris Sununu, in his official capacity – by and
through their counsel, the Office of the New Hampshire Attorney
General, have moved to dismiss pro se plaintiff John Redman's
complaint (Doc. No. 1) challenging the constitutionality of the
State's driver's license and vehicle registration statutes under
Federal Rules of Civil Procedure 12(b)(1) (lack of jurisdiction)
and 12(b)(6) (failure to state a claim). See Defs.' Mot. to
Dismiss (Doc. No. 7).  In his complaint, Redman contends that he
has a fundamental right to drive his vehicle on public ways
without interference, and that the defendants' efforts to
enforce the State's driver's license and vehicle registration
requirements infringe on several of his constitutional rights.
As such, he seeks monetary damages, declaratory relief, and an
injunction prohibiting the enforcement of these allegedly
unconstitutional motor vehicle requirements.  Also before the
court is Redman's motion seeking an order staying various state
courts and municipal police departments from compelling him to

participate in unspecified criminal enforcement proceedings. See Redman's Mot. for Mandamus Relief (Doc. No. 6).

As discussed below, the undersigned Magistrate Judge finds that (1) the Eleventh Amendment bars all of Redman's claims against the State and all of his claims for money damages asserted against Governor Sununu in his official capacity; and (2) Redman has failed to state a legally cognizable claim upon which relief can be granted. Accordingly, the District Judge should grant the defendants' motion and dismiss Redman's complaint in its entirety. Additionally, the District Judge should deny, without prejudice, Redman's pending motion for mandamus and/or injunctive relief.

## I.    **Background**

The following draws from Redman's filings, restating the pertinent non-conclusory factual allegations in his complaint and accompanying filings.[1]  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).

Redman, a resident of Grafton County, New Hampshire, is a "Called Christian Minister among those in the Society of Friends" who "believes fervently that following Christ means to

---

[1] Redman attached to his complaint a memorandum of law, among other documents, in support of his constitutional claims. See Redman's Mem. of Law (Doc. No. 1-2). The court construes the memorandum as an addendum to Redman's complaint and will consider the assertions made therein in its preliminary review of the complaint. Cf. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

abjure the false religion of statism . . . ."  Compl. (Doc.
No. 1, ¶ A1–A3).  As part of this belief, Redman maintains that
the State lacks a "lawful, constitutionally based power to
prohibit the operation" of motor vehicles "and other forms of
conveyance" on public roadways for non-commercial purposes.  Id.
¶ 1.  He additionally claims that being able to drive on "public
street(s) with freedom from police interference, unless [a
person] is engaged in suspicious conduct associated in some
manner with criminality[,] is a FUNDAMENTAL CONSTITUTIONAL RIGHT
. . . ."  Redman's Mem. of Law (Doc. No. 1-2, ¶ 142).

According to Redman, he "gave up having a [d]river's
[l]icense and auto [r]egistration" in 1990 and, since then, "has
periodically been arrested in the various locations he has
habituated . . . for NOT having a [d]river's [l]icense or
[v]ehicle [r]egistration."  Compl. (Doc. No. 1, ¶ A2).  He
reports that: on at least six occasions, unspecified police
forces have "stolen" his automobile "under false color of law,"
id. ¶ A2; he has spent "a day in jail for his refusal to pay a
past $120 fine" for contempt, id. ¶ A6; and he "most recently
had to pay $544 to retrieve his unlawfully stolen automobile
from impoundment on the orders of the Danbury/Alexandria, NH
police chief."  Id. ¶ A5.  He also claims that he "is currently
under threat in three different courts being charged with,
variously, 'driving' after suspension/revocation, 3rd offense
(year in prison), unregistered 'vehicle[,' and] disobeying a

police order," and, as a result, is facing "thousands of dollars in fines and other costs . . . ."  Id. ¶ A4.

Redman asserts that these injuries to his "finances, time, [and] person[]" give rise to twelve separate causes of action for purported violations of his rights under the U.S. Constitution, as incorporated against the State under the Fourteenth Amendment.  Id. ¶ 20.  He further avers that "the past and continued and the future attempt[s] to enforce" the State's motor vehicle laws, particularly its driver's license and vehicle registration requirements, "have caused and will continue to cause irreparable injury" to him and other unnamed individuals.  Id.

Given these purported violations, Redman asks that this court enter a declaratory judgment finding that the State's motor vehicle laws must be redrawn; award him actual damages; and issue a writ of mandamus ordering the State to enter binding arbitration to compensate all who have suffered unconstitutional arrests, imprisonment, and other sanctions under the motor vehicle laws.  Id. ¶ 43-47.  In addition, he has separately filed a pre-discovery motion for mandamus relief.

## II.  **Motion to Dismiss Standards**

## A.    **Rule 12(b)(1): Lack of Subject Matter Jurisdiction**

The party invoking a federal court's limited jurisdiction carries the initial burden of proving that jurisdiction exists. See Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003);

Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).  In
determining whether this burden has been met at the motion-to-
dismiss stage, the court accepts as true all well-pled factual
assertions in the plaintiff's complaint and construes all
reasonable inferences therefrom in the plaintiff's favor. Katz
v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012).  Because the
plaintiff is proceeding without an attorney, the court also
construes his pleadings and filings liberally.  See Ahmed v.
Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  The court,
however, is not bound solely by the allegations in the pleadings
and may consider certain outside materials to determine whether
it has subject matter jurisdiction to consider a case.  See
Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

**B.    Rule 12(b)(6): Failure to State a Claim**

Rule 12(b)(6) imposes a standard similar to Rule 12(b)(1).
See Katz, 672 F.3d at 71 (citing Nisselson v. Lernout, 469 F.3d
143, 150 (1st Cir. 2006)).  In considering a motion to dismiss
for failure to state a claim, the court makes determinations
about the sufficiency of a complaint through a "holistic,
context-specific analysis." Gilbert, 915 F.3d at 80.  First, it
"isolate[s] and ignore[s] statements in the complaint that
simply offer legal labels and conclusions or merely rehash
cause-of-action elements." Zenon v. Guzman, 924 F.3d 611, 615
(1st Cir. 2019) (internal quotation marks and citations
omitted).  The court then "evaluate[s] whether the remaining

factual content supports a 'reasonable inference that the
defendant is liable for the misconduct alleged.'" In re Curran,
855 F.3d 19, 25 (1st Cir. 2017) (quoting Shay v. Walters, 702
F.3d 76, 82 (1st Cir. 2012)).

In doing so, the court, construing the pro se plaintiff's
pleadings liberally, see Ahmed, 118 F.3d at 890, accepts "all
well-pled facts in the complaint as true" and construes all
reasonable inferences in the plaintiff's favor. Gilbert, 915
F.3d at 80. But the court "need not give weight to bare
conclusions, unembellished by pertinent facts." Shay, 702 F.3d
at 82-83. If the complaint's factual averments are "too meager,
vague, or conclusory to remove the possibility of relief from
the realm of mere conjecture," dismissal is warranted. S.E.C.
v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

## III. __Discussion__

The defendants contend that Redman's complaint should be
dismissed on both jurisdictional (Rule 12(b)(1)) and sufficiency
(Rule 12(b)(6)) grounds. "When faced with motions to dismiss
under both 12(b)(1) and 12(b)(6), a district court, absent good
reason to do otherwise, should ordinarily decide the 12(b)(1)
motion first." Ne. Erectors Ass'n of the BTEA v. Sec'y of
Labor, Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st
Cir. 1995). Accordingly, the court first addresses the
defendants' jurisdictional arguments based on state sovereign
immunity, see Bradley v. Cruz, No. 1:13-CV-12927-IT, 2017 WL

3443212, at *1, 2017 U.S. Dist. LEXIS 127044, at *2 (D. Mass. Aug. 10, 2017) ("Rule 12(b)(1) is '[t]he proper vehicle for challenging a court's subject matter jurisdiction,' including on the basis of sovereign immunity." (alteration in original) (quoting Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001))), and then assesses whether Redman has stated a legally cognizable claim for relief.

**A.    Subject Matter Jurisdiction**

With respect to jurisdiction, the defendants contend that state sovereign immunity, as affirmed in the Eleventh Amendment of the U.S. Constitution, strips this court of subject matter jurisdiction to consider Redman's constitutional claims against the State, as well as his claims for monetary relief against Governor Sununu in his official capacity.  Additionally, they argue that Redman may only bring claims on behalf of himself, not other unspecified plaintiffs, and only for injuries that he himself has suffered.  As discussed below, the court agrees.

1.    <u>The Eleventh Amendment and State Sovereign Immunity</u>

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI. "Long interpreted as an affirmation of state sovereign immunity[,] . . . [the] amendment (despite its literal text)

also bar[s] a citizen from bringing a federal court action against his or her own [s]tate." Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015) (alterations in original) (quoting Maysonet-Robles v. Cabrero, 323 F.3d 43, 48 (1st Cir. 2003)); see also Sinapi v. R.I. Bd. of Bar Exam'rs, 910 F.3d 544, 553 (1st Cir. 2018) ("It is now well established that such immunity also applies to suits brought by a state's own citizens." (citation omitted)).  The Eleventh Amendment also precludes suits for damages against state employees sued in their official capacities.  See Davidson v. Howe, 749 F.3d 21, 27-28 (1st Cir. 2014).

Though Section 5 of the Fourteenth Amendment grants Congress the power to abrogate the states' sovereign immunity from suits for damages, a plaintiff may recover damages against a state only where Congress has "unequivocally expressed" an intent to create a private action for such damages.  See Tennessee v. Lane, 541 U.S. 509, 517 (2004); Sinapi, 910 F.3d at 553 (quoting United States v. Georgia, 546 U.S. 151, 158 (2006)).  Similarly, a state is deemed to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction." Edelman v. Jordan, 415 U.S. 651, 673 (1974) (internal quotation marks and citations omitted).  Here, however, it is beyond dispute that Congress did not intend to abrogate state sovereign immunity for damages

claims under 42 U.S.C. § 1983, like those asserted by Redman in his complaint. Quern v. Jordan, 440 U.S. 332, 340–45 (1979). Additionally, Redman has pointed to no New Hampshire statute or other legal provision in which the State has expressed an intent to waive its sovereign immunity against claims like Redman's.

Redman's broad invocations of "Due Process," without an actual legally cognizable due process claim, see Part II.B, infra, does not satisfy his jurisdictional burden of pleading an exception to state sovereign immunity. See Redman's Obj. to Mot. to Dismiss (Doc. No. 8, at 2) (asserting that because Redman "invoked the Due Process guaranteed [by the Constitution], there goes the state's [immunity] argument"). Because the Eleventh Amendment bars Redman's constitutional claims against the State, the District Judge should dismiss all of his claims against the State for lack of subject matter jurisdiction. Additionally, because the Eleventh Amendment precludes suits for damages against state employees sued in their official capacities, the District Judge should dismiss such claims against Governor Sununu.

2.  *Ex Parte Young* Exception to State Sovereign Immunity

Under the Ex parte Young exception to state sovereign immunity, claims seeking prospective injunctive and declaratory relief to stop an ongoing violation of federal law by a state official must be brought against the state official in their official capacity. Va. Office for Prot. & Advocacy v. Stewart,

563 U.S. 247, 255–56 (2011); Ex parte Young, 209 U.S. 123, 156 (1908).  On its face, Redman's complaint purports to seek prospective relief from Governor Sununu's future enforcement of the State's driver's license and vehicle registration requirements against drivers engaged in non-commercial activities.  The defendants do not argue that Governor Sununu lacks a sufficient connection to State or municipal enforcers of these challenged statutory provisions.  Ex parte Young, 209 U.S. at 157 ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.").  The court will therefore assume, without finding, that Governor Sununu has a sufficient connection and assess whether Redman has stated a sufficient and cognizable legal claim for prospective relief.

3.  <u>Injuries and Claims of Unnamed Plaintiffs</u>

Redman attempts to bring claims and seek remedies on behalf of all persons who he believes have suffered unconstitutional arrests, imprisonments, and sanctions under the State's driver's license and vehicle registration statutes.  <u>See</u> Compl. (Doc. No. 1, ¶¶ 1, 48); Redman's Mem. of Law (Doc. No. 1-2, ¶ 1).  Under federal law and this court's local rules, however, parties to a federal lawsuit cannot be represented by anyone other than

10

themselves or a member of the bar.  See 28 U.S.C. § 1654; LR
83.2(d) ("Persons who are not members of the bar . . . will be
allowed to appear before this court only on their own behalf.");
see also Pappas v. Philip Morris, Inc., 915 F.3d 889, 894 (2d
Cir. 2019).  The District Judge, therefore, should dismiss all
claims Redman has asserted on behalf of any class of people or
any individual person(s) other than himself.

**B.    Failure to State a Claim**

Redman seeks to assert twelve causes of action alleging, at
their core, that enforcement of the State's driver's license and
vehicle registration requirements against him violates his
federal constitutional rights.  Section 1983 creates a cause of
action against those who, while acting under color of state law,
violate federal constitutional or statutory provisions.  See
Gray v. Cummings, 917 F.3d 1, 7–8 (1st Cir. 2019) (citing 42
U.S.C. § 1983)).  Because Redman's claims allege violations of
federal constitutional law by Governor Sununu, they arise under
§ 1983.  As such, the court assesses whether Redman has
sufficiently stated a § 1983 claim in any of his twelve counts.
Before doing so, it addresses two preliminary issues.

1.    Rule 8(a)(2)'s Pleading Requirements

In their motion to dismiss, the defendants briefly argue
that Redman's pleadings should be dismissed for failing to
comply with Federal Rule of Civil Procedure 8(a)(2)'s
requirement that a pleading contain "a short and plain

statement" of the plaintiff's claims.  Defs.' Mot. to Dismiss
(Doc. No. 7, at 8-9).  Though this court has the power under the
Federal Rules to dismiss a complaint that is "unnecessarily
lengthy, repetitive, convoluted, or otherwise difficult to
comprehend," Currier v. Town of Gilmanton, No. 18-cv-1204-LM,
2020 WL 1923357, at *2, 2020 U.S. Dist. LEXIS 69878, at *4
(D.N.H. Apr. 12, 2019); see also Kuehl v. F.D.I.C., 8 F.3d 905,
908 (1st Cir. 1993) ("A district court has the power to dismiss
a complaint when a plaintiff fails to comply with the Federal
Rules of Civil Procedure, including Rule 8(a)(2)'s 'short and
plain statement' requirement."), the defendants have made no
attempts to move for a more definite statement under Rule 12(e).
Given that the defendants have not attempted to seek Rule 12(e)
relief and have also already responded to the substance of
Redman's allegations, it is not apparent why the court should
dismiss Redman's complaint without evaluating the sufficiency of
his factual allegations.  The District Judge should therefore
reject the defendants' Rule 8(a)(2) argument.

    Nevertheless, the court notes that, throughout Redman's
complaint and lengthy accompanying memorandum, he repeatedly
misquotes case authority or misrepresents, through the use of
quotation marks, that his own legal views are also statements
made by prior courts.  Despite Redman's pro se status, the court
warns him against making similar misrepresentations in future
filings.  And as required by the Federal Rules and binding

precedent, the court gives no weight to such "bare conclusions, unembellished by pertinent facts," in assessing whether Redman has stated sufficient facts to sustain a claim for relief.  See Shay, 702 F.3d at 82-83.

2.  Purported Constitutional "Right to Drive"

Redman's complaint contains twelve causes of action asserting that enforcement of the State's driver's license and vehicle registration requirements violates his constitutional rights.  Though each of these counts focuses on a different purported constitutional violation, they all share a common premise: that citizens have an unfettered constitutional right to drive motor vehicles on public ways for noncommercial purposes.  See Redman's Mem. of Law (Doc. No. 1-2, ¶¶ 142-91). Redman elaborates on the nature of this purported right throughout his filings.  The court addresses it here, as it is helpful, if not necessary, for understanding Redman's complaint and the causes of action the defendants seek to dismiss.

As explained by Redman: the purported "RIGHT of the citizen to DRIVE on the public street with freedom from police interference, unless he [or she] is engaged in suspicious conduct associated in some manner with criminality[,] is a FUNDAMENTAL CONSTITUTIONAL RIGHT which must be protected by the courts."  Redman's Mem. of Law (Doc. No. 1-2, ¶ 142).  This purported extension of the "right to travel," in Redman's view, "is a part of the liberty" of which the "citizen cannot be

deprived without [d]ue [p]rocess of law," id. ¶ 147 (quoting
United States v. Laub, 385 U.S. 475, 481 (1967)) (internal
quotation marks omitted), and includes the right to travel by
automobile for non-commercial purposes. Id. ¶ 150. Redman
concedes that: "commercial users of the Public's roads have no
right to make a living for free from those roads despite the
fact that they pay heavily for their vehicles and their
insurance," id. ¶ 166; regulations on commercial use do not
violate the Fourteenth Amendment, id.; and state legislatures
have "plenary control of the highways of the state(s) . . . ,"
id. ¶ 167. He zealously maintains, however, that states cannot
require private individuals to obtain a driver's license or
register their vehicles when those individuals are driving their
vehicles for personal use. He asserts that, in passing such
laws, the State has unlawfully converted the irrevocable right
of persons to drive into a "privilege," thereby exceeding the
limits of its powers set by Congress and the U.S. Constitution.[2]
See id. ¶ 182. Additionally, he claims that, by driving his
unregistered vehicle without a license, he is "exercising
constitutionally protected freedoms upon the public property
dedicated to [the people's] use." Id. ¶ 191.

---

[2] He further asserts that certain federal statutes
corroborate this interpretation because they proscribe conduct
only for certain commercial driving purposes. See id. ¶¶ 183-
191 (asserting, among other things, that he is not a "driver,"
"person," "motor vehicle," or "knowingly doing any bad thing"
under the definitions for those words in various federal
statutes). The court addresses this argument below. See Part
III.B.6, infra (discussing Redman's preemption-based claims).

Liberally construed, these conclusory allegations appear to assert that the challenged motor vehicle statutes regulating non-commercial uses of public roads run afoul of the Fourteenth Amendment's Due Process Clause and are preempted by federal motor vehicle statutes.  Thus, Redman's asserted causes of action can succeed only if Redman has asserted a sufficient Fourteenth Amendment Due Process claim or a sufficient federal preemption claim regarding his asserted rights.  For simplicity, the court addresses the parties' arguments out of order and assesses the sufficiency of these particular claims first before addressing Redman's other causes of action.  As discussed below, the court finds that Redman has failed to sufficiently plead any legally cognizable claim for relief.  See Fed. R. Civ. P. 12(b)(6).

3.    Fourteenth Amendment Procedural Due Process

Beginning with Count 2, Redman contends that the State's "[d]river's [l]icense and [v]ehicle [r]egistration statutes unlawfully impose a duty which condemns [p]roperty and [p]rivacy [r]ights without any notice or opportunity to be heard," in violation of "Procedural Due Process" under the Fourteenth Amendment.  Compl. (Doc. No. 1, ¶ 24).  He also asserts that the statutes violate due process by "not requir[ing] a harm or damage to even exist much less be proved."  Id.  As discussed above, see Part III.B.2, supra, it appears that Redman bases this Count, at least in part, on the premise that he has a

fundamental right to drive that the State cannot deprive him of "without [him] having first committed a crime for which that was a possible punishment." Compl. (Doc. No. 1, ¶ 24). These allegations fall short of stating a cognizable procedural due process claim.

"The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of 'life, liberty, or property, without due process of law.'" Harron v. Town of Franklin, 660 F.3d 531, 535 (1st Cir. 2011) (quoting U.S. Const. amend. XIV, § 1). "This prohibition guards against 'the arbitrary exercise of the powers of government'" and "has both procedural and substantive components." Id. (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)).

"'[P]rocedural due process' is simply 'a guarantee of fair procedure.'" Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)). "The basic purport of the constitutional requirement is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "When a procedural due process claim is advanced, the proper focus must be on the manner in which the state has acted: 'how and when' the alleged deprivation was effected." Id. "Whether the deprivation . . . was itself

16

erroneous is beside the procedural due process point." Id.
(citing Carey v. Piphus, 435 U.S. 247, 266 (1978)).  This
contrasts with "a substantive due process claim," which "rests
not on perceived procedural deficiencies but on the idea that
the government's conduct, regardless of procedural swaddling,
was in itself, impermissible." Id.  (The Court addresses
substantive due process infra, see Part III.B.4.)

     Here, Redman's allegations, though couched in the phrase
"procedural due process," are silent as to the specific
procedures that he believes he is owed, but has been denied, for
his past (or current) violations of the State's driver's license
and vehicle registration statutes.  To the extent Redman
contends he lacked notice of these statutes prior to his arrests
or prosecutions, his allegations demonstrate that he knew (or
was aware) of the State's drivers' license and vehicle
registration requirements, and that he willfully defied them out
of the belief that they are unconstitutional.  With respect to
an opportunity to be heard, Redman's pleadings also indicate
that he refuses to avail himself of the state court process
provided to him by willfully failing to appear at court
hearings, even though he is currently facing charges for motor
vehicle violations in at least three state district courts.

     Thus, regardless of whether the State's motor vehicle
statutes are in substance constitutional – a question separate
from the procedural due process one – Redman's allegations fail

to suggest that he has been, or continues to be, deprived of notice or an opportunity to be heard.  Accordingly, the District Judge should dismiss Count 2 for failing to plead a cognizable Fourteenth Amendment procedural due process claim.

4.    Fourteenth Amendment Substantive Due Process

In Count 3, Redman argues that the State's motor vehicle laws function as a prior restraint on his right to use his property, a restriction which, in his view, violates the Fourteenth Amendment's Due Process Clause.  Specifically, he asserts that:

> The Due Process Clause of the Fourteenth Amendment protects the right to be free from punishment for the speculative harm that might be done by an actor (individual) carrying out the rightful use of their Private Property in the future.  This is quite similar to the First Amendment related state offense of Prior Restraint. "Golly, he has a headlight out.  He MIGHT cause an accident.  We gotta lock him up and tow his car."

Compl. (Doc. No. 1, ¶ 26).  Like with Count 2, it appears that Redman bases Count 3 on the premise that he has a substantive due process right to drive without state interference.  Stripped of legal conclusions, his allegations fail to sustain such a substantive due process claim.

In contrast to procedural due process, "[t]he constitutional guarantee of substantive due process functions to protect individuals from particularly offensive actions on the part of government officials."  González-Droz v. González-Colon,

660 F.3d 1, 15–16 (1st Cir. 2011) (internal quotation marks and
citations omitted).  In pleading a substantive due process
claim, "[t]he plaintiff bears the burden of showing that the
challenged actions were 'so egregious as to shock the
conscience.'"  Id. (citation omitted).  "To sink to this level,
the challenged conduct must be 'truly outrageous, uncivilized,
and intolerable.'"  Id. (citation omitted).

    To meet this pleading burden, Redman asserts that the right
to interstate and intrastate travel also includes an alleged
right to travel by motor vehicle without prior restraints.
Redman's Mem. of Law (Doc. No. 1-2, ¶¶ 142-65).  Neither the
Fourteenth Amendment's Due Process Clause nor any other
constitutional provision, however, grants citizens an absolute
right to drive motor vehicles for non-commercial purposes on
public roads, or prevents the states from passing legislation
that abridges or regulates the use of motor vehicles on public
ways.  Over the past 100 years, the Supreme Court has repeatedly
recognized that states may require those operating motor
vehicles on public ways to obtain a driver's license and to
register their vehicles.  E.g., Reitz v. Mealey, 314 U.S. 33, 36
(1941) ("The use of the public highways by motor vehicles, with
its consequent dangers, renders the reasonableness and necessity
of regulation apparent."); Kane v. New Jersey, 242 U.S. 160, 167
(1916) ("The power of a state to regulate the use of motor
vehicles on its highways has been recently considered by this

court and broadly sustained.").  Additionally, it has explained
"[t]here is no solid foundation for the claim" that state-
imposed driver's license and vehicle registration requirements
"directly interfere[]" with the constitutionally recognized
right to travel inter- or intrastate.  See Hendrick v. Maryland,
235 U.S. 610, 624 (1915).

Accordingly, Redman has not shown that either the
challenged motor vehicle statutes or the State's enforcement of
those statutes approach the level of "truly outrageous,
uncivilized, and intolerable" conduct required to sustain a
substantive due process claim based on a "right to drive."  The
District Judge should therefore dismiss Count Three for failing
to state a claim.

5.    Fourteenth Amendment Equal Protection Clause

In Counts 4 and 10, Redman contends that the State has
denied him equal protection under the law by converting his
purportedly absolute legal right to use his motor vehicle into a
regulatable privilege (in the legal sense of the word), and by
enforcing its purportedly unconstitutional driver's license and
vehicle registration laws in an irrational and pretextual
manner.  Compl. (Doc. No. 1, ¶¶ 28, 38).  Liberally construed,
his allegations in Count 10 also appear to suggest that the
strict liability-nature of the State's driver's license and
vehicle registration requirements violates the Fourteenth

Amendment.  See id. (referring to an "irrebuttable presumption[][3]
that we have no chance of overcoming (in state court)").  These
allegations are insufficient for sustaining an Equal Protection
(or any other Fourteenth Amendment) claim.

The Fourteenth Amendment Equal Protection Clause commands
that no State shall "deny to any person within its jurisdiction
the equal protection of the laws."  U.S. Const. amend. XIV, § 1.
Though the "Equal Protection Clause does not forbid
classifications," it does "keep[] governmental decisionmakers
from treating differently persons who are in all relevant
respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  To
state a claim, a plaintiff must allege facts indicating that,
"compared with others similarly situated, [he or she] was
selectively treated . . . based on impermissible considerations
such as race, religion, intent to inhibit or punish the exercise
of constitutional rights, or malicious or bad faith intent to
injure a person."  Barrington Cove Ltd. P'ship v. R.I. Hous. &
Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (quoting
Rubinovitz v. Rogato, 60 F.3d 906, 909–10 (1st Cir. 1995))
(emphasis in original).  If a legislative classification does
not disadvantage a suspect class or violate a fundamental right,
the State need only demonstrate that the classification "bears a

---

[3] Redman's complaint does not identify any "irrebuttable
presumption" to which is he subject to.  As such, "[w]hatever
the continued scope of the irrebuttable presumption doctrine, it
is inapplicable here because of the absence of any presumption
of any nature."  McInnis v. Weinberger, 530 F.2d 55, 63 (1st
Cir. 1976) (citation omitted).

rational relationship to the furtherance of a legitimate governmental purpose." Gary S. v. Manchester Sch. Dist., 374 F.3d 15, 22 (1st Cir. 2004) (citation omitted).

Stripped of legal conclusions, Redman's complaint does not include any allegation showing that he has been treated differently than others or that any selective treatment in the State's enforcement of its motor vehicle laws was based on considerations deemed impermissible under court precedent. See Part III.B.4, supra (rejecting Redman's argument that by driving without a license or registered vehicle, he is exercising a fundamental constitutional right). Furthermore, binding precedent makes clear that "a state may rightfully prescribe uniform regulations necessary for public safety," including requiring "the registration of such vehicles and the licensing of their drivers . . . ." Hendrick, 235 U.S. at 622. The fact that the State imposes strict liability for driver's license and vehicle registration violations does not transform such laws into something constitutionally suspect. See Cochran v. Ill. State Toll Highway Auth., 828 F.3d 597, 601 (7th Cir. 2016) (finding that strict liability statutes in the motor-vehicle-operation context "are constitutional," and that "the fact that plaintiff could not present a knowledge defense at his hearing d[id] not render the hearing meaningless"); cf. Karlin v. Foust, 188 F.3d 446, 475–76 (7th Cir. 1999) (noting that "the Supreme Court has recognized the propriety of strict liability without

22

any element of scienter in statutes that are 'regulatory' in
nature").  The District Judge should therefore dismiss Counts 4
and 10 for failing to state a claim.

6.    Commerce Clause and Supremacy Clause Preemption

In Count 12, Redman claims that the State's driver's
license and vehicle registration laws "transcend[]" the "lawful
limits" imposed on states to regulate the usage of motor
vehicles under the U.S. Constitution.  Compl. (Doc. No. 1,
¶ 42).  To support this Count, Redman asserts that the Commerce
Clause of the U.S. Constitution – granting Congress the power to
regulate, among other things, interstate commerce, see Art. 1,
§ 8, cl. 3, as well as "numerous federal [statutes and]
regulations," have "removed" the usage of motor vehicles "from
all purview of state legislatures[,] including that of New
Hampshire," except in limited circumstances.  Compl. (Doc.
No. 1, ¶ 42).  These limited circumstances, in Redman's view,
are "safety, caution, traffic lights, speed limits, etc."[4]
Compl. (Doc. No. 1, ¶ 42).  As discussed below, these Commerce
Clause and preemption arguments are mistaken.  The court
addresses each argument in turn.

_____

[4] Redman's complaint represents that in People v. Nothaus,
147 Colo. 210 (1961), the Colorado Supreme Court defined
permissible regulation as including "'safety, caution, traffic
lights, speed limits, etc.'" but not licenses or vehicle
registrations.  See Compl. (Doc. No. 1, at ¶ 42) (purportedly
quoting Nothaus).  Nothaus, however, contains no such quotation
and, to the contrary, explicitly refutes Redman's position.

*a.  The Commerce Clause*

The Commerce Clause "provides that '[t]he Congress shall have Power . . . [t]o regulate Commerce . . . among the several States.'  Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." Or. Waste Sys., Inc. v. Dep't of Env't Quality of State of Or., 511 U.S. 93, 98 (1994).  Discrimination in this context refers to "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Or. Waste Sys., 511 U.S. at 99.

The State's driver's license requirement, however, applies only to drivers upon public ways in the State.  See N.H. Rev. Stat. Ann. ("RSA") § 263:1.  Likewise, the vehicle registration requirement applies only to State residents.  See N.H. Rev. Stat. Ann. § 261:3 (exempting nonresidents from vehicle registration requirements).  "[I]n the absence of national legislation covering the subject," the State "may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles,-those moving in interstate commerce as well as others," including regulations that "require the registration of such vehicles and the licensing of their drivers." Hendrick, 235 U.S. at 622 (emphasis added).  As explained by the Supreme Court, "[t]his is but an exercise of the police power uniformly

24

recognized as belonging to the States and essential to the
preservation of the health, safety and comfort of their
citizens; and it does not constitute a direct and material
burden on interstate commerce." Id.; see also People v.
Nothaus, 147 Colo. 210, 215 (1961) ("no one questions the
authority of the [state legislature] to establish reasonable
standards of fitness and competence to drive a motor vehicle
which a citizen must possess before he drives a car upon the
public highway"). Because Redman has failed to demonstrate that
the challenged statutes violate the Commerce Clause, the
District Judge should reject Redman's claims asserting such a
violation for failing to state a claim.

*b.    Supremacy Clause*

The Supremacy Clause simply "creates a rule of decision" on
"what to do when state and federal laws clash." Armstrong v.
Exceptional Child Ctr., Inc., 575 U.S. 320, 324 (2015). It "is
not the source of any federal rights and certainly does not
create a cause of action." Id. (internal quotation marks and
citations omitted)). As a result, "[t]he proper analysis for
questions of federal preemption is well settled. Where Congress
has clearly expressed its intention to preempt conflicting state
law, the only inquiry is whether the state law in question
actually conflicts with federal law." N.H. Motor Transp. Ass'n
v. Town of Plaistow, 836 F. Supp. 59, 64 (D.N.H. 1993) (internal
quotation marks and citations omitted).

With respect to the Supremacy Clause, Redman has failed to allege facts sufficient to show that federal law arguably preempts the driver's license or vehicle registration requirements.  Deep in the memorandum submitted with Redman's complaint, Redman identifies several federal laws that he believes preempt or limit the application of the driver's license and motor vehicle requirements.  See Redman's Mem. of Law (Doc. No. 1-2, ¶¶ 182-94).  These federal laws include (1) 18 U.S.C. § 31, which defines the term "motor vehicle" as used in the Aircraft and Motor Vehicle Crimes Chapter of the U.S. Code as a vehicle "used for commercial purposes," and (2) 49 C.F.R. § 390.1 et seq., which sets definitions for the Federal Motor Carrier Safety Administration's promulgated regulations for commercial vehicles.[5]  Notably, each of these definition-providing statutes explicitly states that the definitions therein apply only to their respective statutory chapters or subchapters, not the entirety of the United States Code (or to any state's laws.  See 18 U.S.C. § 31(a)(6) (noting that the definitions therein apply only to "this chapter," Chapter 2 – Aircraft and Motor Vehicles (§§ 31 – 40A)); 49 C.F.R. § 390.1 (noting that the definitions therein apply only to "this subchapter," "Subchapter B – Federal Motor Carrier Safety Regulations").  Congress has thus expressed an intent

---

[5] Redman also cites 4 U.S.C. § 112 (consent of Congress to compacts between States for cooperation in prevention of crime). It is not clear from his filings how § 112 relates to his claim.

that these definitions be construed narrowly, rather than as a substitute for any possible state statutory definitions.  More importantly, neither of these statutes – each covering the narrow topic of driving commercial vehicles – actually conflicts with how the State applies or enforces its driver's license and vehicle registration requirements against private individuals like Redman.

In sum, Redman's allegations are insufficient to sustain his claim that the State's driver's license and vehicle registration requirements conflict with, and are thus preempted by, a federal statute, regulation, or constitutional provision. His allegations are also insufficient to sustain a claim that Congress has implicitly preempted states from regulating the usage of motor vehicles.  See Bartlett v. Mut. Pharm. Co., 659 F. Supp. 2d 279, 290 (D.N.H. 2009) (explaining that Congress may implicitly preempt a state law by "indicat[ing] an intent to occupy an entire field to the exclusion of state law"); Redman's Mem. of Law (Doc. No. 1-2, ¶ 167) (conceding that "the legislature DOES, in fact, have plenary control of the highways of the state(s) but that it is limited").  The District Judge should therefore dismiss Redman's Supremacy Clause preemption claim, and the entirety of Count 12, for failing to state a claim.

7.    Invasion of Privacy Under State Common Law

In Count 5, Redman contends that the State's driver's license and vehicle registration statutes impermissibly force citizens to trade their personal information for the right to travel on public roads – a right Redman intimates is protected by the U.S. Constitution and is one upon which the State cannot infringe.  Compl. (Doc. No. 1, ¶ 30).  Liberally construed, his allegations further suggest that he has been "humiliated in front of [his] neighbors passing by" when pulled over by local police for motor vehicle law violations.  Id.  Stripped of legal conclusions, these allegations fail to allege the deprivation of a recognized constitutional right.  See Part III.B.2-6, supra (rejecting Redman's conclusory assertions that there is a fundamental constitutional right to drive a motor vehicle on public ways without state interference).  The court thus construes these allegations as attempting to assert a tort claim under state common law.

In New Hampshire, an invasion-of-privacy tort claim may be brought for four kinds of conduct: "(1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light before the public." Hiltner v. Simon & Schuster, Inc., 34 F. App'x 394, 395 (1st Cir. 2002) (quotations and citations omitted).  Each type of claim has its own pleading elements.  See Restatement (Second) of Torts

§ 652A-D (1977).  Common among each non-appropriation claim,[6] however, is the requirement that a plaintiff allege an invasion into a private matter which would be highly offensive to a reasonable person.  See, e.g., id. § 652D ("One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.").

Ample authority makes clear that individuals have no reasonable expectation of privacy when traveling along public ways.  See, e.g., United States v. Knotts, 460 U.S. 276, 281–82 (1983) (holding that individuals have no reasonable expectation of privacy on public roads); Restatement (Second) of Torts § 652B, cmt. c (1977) ("Thus there is no liability . . . for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye.").  As such, Redman's allegation that he has been "humiliated" when pulled over on public roadways in view of his neighbors fails as a matter of law to meet the pleading burden for these tort claims alleging an invasion of his privacy.  Accordingly, the District Judge should dismiss Redman's state common law invasion of privacy claims.

---

[6] An appropriation-stylized privacy claim is not implicated by the factual allegations pled in this case.

8.    Thirteenth Amendment Abolition of Slavery

In Count 6, Redman contends that the State's motor vehicle laws impermissibly infringe upon the "'personal liberty' guaranteed by [the] Thirteenth Amendment." Compl. (Doc. No. 1, ¶ 29[7]). He further asserts that these "personal liberties" include those "guaranteed by the first nine amendments of the United States Constitution, as well as interests created when states . . . impose limitations on their (own) discretion . . . ." Id. These assertions have no legal support and fail to state a cognizable legal claim.

The Thirteenth Amendment contains two sections. Section 1 abolishes slavery and involuntary servitude within the United States's jurisdiction. Section 2 provides that "Congress shall have power to enforce this article by appropriate legislation." U.S. const. amend. XIII, § 2. Nothing within these sections speaks to some general cause of action for infringements upon "personal liberties." The District Judge should dismiss Redman's Thirteenth Amendment claim as frivolous.

9.    Unspecified Inherent Rights

In Count 7, Redman protests that he has "done nothing except exercise [his] God-given Property rights and lawfully ignored" what he believes to be "unconstitutionally imposed mandates/duties by the state." Compl. (Doc. No. 1, ¶ 31).

---

[7] The court notes that Redman erred in numbering the paragraphs in his complaint and, as a result, reuses numbers 28-30 to refer to two distinct sets of paragraphs. His Thirteenth Amendment claim begins on page 18 of his complaint.

According to Redman, "[t]ravel is not a privilege requiring licensing, vehicle registration, or forced insurances." Id. (emphasis in original).  He also asserts that "the Right of the citizen to Drive on the public street with freedom from police interference, unless he is engaged in suspicious conduct associated in some manner with criminality[,] is a FUNDAMENTAL CONSTITUTIONAL RIGHT . . . ." Id.  In doing so, he falsely represents, through the use of quotation marks, that other courts have espoused these specific views. No court has recognized, however, at least to this court's knowledge, that driving a motor vehicle on public streets without licensing, registrations, or insurance is a fundamental constitutional right.  See also Hendrick, 235 U.S. at 624 ("[t]here is no solid foundation for the claim" that state-imposed driver's license and vehicle registration requirements "directly interfere[]" with the constitutionally recognized right to travel inter- or intrastate).  Accordingly, Count 7 should be dismissed because Redman has failed to articulate a legally cognizable claim for relief arising under 42 U.S.C. § 1983.

10.  The Tenth Amendment's Reservation of Power to the States

In Count 8, Redman contends that the State's passage of the challenged motor vehicle laws "violated the spirit and intent" of its "police powers," which Redman believes are granted to the State by the Tenth Amendment of the U.S. Constitution.  Compl. (Doc. No. 1, ¶ 33).  He further asserts that the State and its

law enforcement officers have disregarded his rights "in favor
of control freaak [sic] 'state interests.'"  Id.  These
allegations fail to state a claim for relief.

"The Tenth Amendment reserves to the states all powers not
vested by the Constitution in the federal sovereign."  United
States v. Meade, 175 F.3d 215, 224 (1st Cir. 1999) (citations
omitted).  In other words, the amendment constrains the federal
government in its ability to displace laws enacted under a
state's inherent police powers.  See Hodel v. Va. Surface Mining
& Reclamation Ass'n, 452 U.S. 264, 291 (1981).  It does not
grant police powers to the states.  Cf. Leisy v. Hardin, 135
U.S. 100, 158 (1890) ("The police power is inherent in the
states, reserved to them by the constitution, and necessary to
their existence as organized governments.").  Nor does it
restrict the states.  Cf. id.

Redman's allegations do not involve an action by the
federal government or otherwise implicate the Tenth Amendment.
Nor do they show that the Constitution has vested Congress with
the exclusive authority to regulate public ways.  As such, the
District Judge should dismiss Count 8 for failing to state a
claim.

11.  No Ninth Amendment Cause of Action

In Count 9, Redman asserts that the Ninth Amendment to the
U.S. Constitution protects "uncountable freedoms," Compl. (Doc.
No. 1, ¶ 35), including the purported right to "driv[e] one's

32

own automobile upon the Public Roads for which he has paid
dearly for . . . that 'thing' which is the object of one's Right
to Travel," Redman's Mem. of Law (Doc. No. 1-2, at 37).  He
contends that, as a result, the State's motor vehicle laws, "as
applied to [him], 'violate the plain and obvious principles of
common right,' and are therefore 'null and void.'"  Id.  He is
mistaken.  "The Ninth Amendment — which stipulates that 'the
enumeration in the Constitution of certain rights, shall not be
construed to deny or disparage others retained by the people' —
does not create substantive rights beyond those conferred by
governing law."  Vega-Rodriguez v. P.R. Tel. Co., 110 F.3d 174,
182 (1st Cir. 1997).  As such, the amendment "does not guarantee
any constitutional right sufficient to support a claim under 42
U.S.C. § 1983."  Slavas v. Town of Monroe, No. 16-CV-30034-KAR,
2017 WL 959575, at *7 n.2, 2017 U.S. Dist. LEXIS 34669, at *21
n.2 (D. Mass. Mar. 10, 2017) (quotation marks and citations
omitted); see also Ojo v. Hillsborough Cty. Dep't of Corr., No.
12-CV-204-SM, 2013 WL 993789, at *2, 2013 U.S. Dist. LEXIS
36431, at *5 n.1 (D.N.H. Mar. 6, 2013), R&R approved, 2013 WL
992554, 2013 U.S. Dist. LEXIS 36240 (D.N.H. Mar. 12, 2013).
Accordingly, because the Ninth Amendment does not provide a
source of rights for Redman's legal claims, the District Judge
should dismiss this count for failing to state a cognizable
legal claim.

12.  Challenge to unspecified state-court convictions

In Count 11, Redman expresses several grievances with the way the State may satisfy its burden of proof in prosecuting motor vehicle violations.  For example, he claims that the State is "never required to prove place [of an incident] because they claim a fiction like 'town of Grafton' which in law does not exist as a fact."  Compl. (Doc. No. 1, ¶ 40).  He asserts that the State is never "called upon . . . to prove mens rea, [instead] relying upon the word 'knowingly.'"  Id. Additionally, he claims that unspecified definitions for "drive" and "vehicle" in the U.S. Code replaced the definitions for those terms in the State's motor vehicle laws and thus prevent the motor vehicle laws from being used against people engaged in non-commercial activities.

Stripped of legal conclusions, Redman's allegations fail to explain with sufficient specificity any purportedly unlawful action taken by the State, and similarly fail to identify the violation of any specific right.  Moreover, to the extent Redman seeks relief in Count 11 from a specific state court conviction, he may not do so in a civil complaint as it is an incorrect vehicle for challenging or overturning state court convictions. See Heck v. Humphrey, 512 U.S. 477, 487 (1994) (holding that a plaintiff cannot challenge an unlawful conviction in a § 1983 action where any award in his favor would "necessarily imply" the invalidity of his conviction unless the conviction has been overturned on appeal or through habeas corpus proceedings).

34

Accordingly, the District Judge should dismiss Count 11 for failing to state a cognizable legal claim for relief, without prejudice to Redman's ability to seek relief against any state court convictions through appropriate legal means.

13. <u>Fourth Amendment Unlawful Arrest Claim</u>

In Count 1, Redman intimates that the defendants violated his Fourth Amendment rights by warrantlessly arresting him, searching him, and seizing his property, presumably for driving without a license or for driving an unregistered vehicle. He does not allege that this purported violation is ongoing or imminent. The court thus construes this claim as one solely for monetary damages arising under 42 U.S.C. § 1983. <u>See also</u> Part III.A.1, <u>supra</u> (explaining that the Eleventh Amendment bars claims for monetary relief against the State, as well as Governor Sununu in his official capacity).[8]

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'" <u>Manuel v. City of Joliet</u>, 137 S. Ct. 911, 917 (2017). "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual [seized] has committed a crime." <u>Bailey v. United States</u>, 568 U.S. 186, 192 (2013) (internal quotation

---

[8] Because <u>Heck</u>, bars non-habeas civil claims that could undermine existing criminal convictions, the Court addresses Redman's Fourth Amendment claims only to the extent that such claims, if successful, would be consistent with <u>Heck</u>, 512 U.S. at 487.

marks and citations omitted).  To assert a false arrest or
malicious prosecution claim under the Fourth Amendment, a
plaintiff must state facts showing that the defendants arrested
him without probable cause.  See id.

Stripped of legal conclusions about the purported
unconstitutionality of the State's motor vehicle laws, Redman's
Fourth Amendment allegations fail to state a claim upon which
relief can be granted.  Redman has not alleged facts showing
that any action by Governor Sununu, in his individual capacity,
caused a purportedly improper search, arrest, or seizure of
Redman or Redman's property.  Additionally, his allegations fail
to demonstrate that any action by local law enforcement officers
(none of whom are named as defendants here) were unreasonable
for lack of probable cause, particularly given Redman's
declaration that the challenged seizures, arrests, and searches
took place because he has been driving without a driver's
license or registered vehicle since 1990.  Compl. (Doc. No. 1,
¶ A2).  Accordingly, the District Judge should dismiss Redman's
Fourth Amendment claims.

## IV.    **Motion for Mandamus Relief**

In addition to his constitutional claims, Redman seeks an
order requiring "the New Hampshire Attorney General to order the
various Lebanon, Franklin[,] and Plymouth prosecutors to request
stays from the associated District Courts and [the] Grafton,
Danbury[,] and Alexandra police departments . . . to halt" what

Redman believes to be false arrests and unconstitutional court proceedings.  Redman's Mot. for Mandamus Relief (Doc. No. 6).  Redman styles this request as a motion for mandamus relief.  The request may also be construed as one for a preliminary injunction.[9]  In either case, Redman has failed to show an entitlement to the relief he requests.

First, with respect to his mandamus request:  A federal writ of mandamus is an extraordinary remedy granted only in exceptional circumstances.  See In re City of Fall River, 470 F.3d 30, 32 (1st Cir. 2006).  Federal mandamus relief may "only reach[] federal officers and employees" who have allegedly failed to perform an official nondiscretionary duty. Hui Lian Ke v. Gonzalez, No. 17-CV-04226-EMC, 2018 WL 1763296, at *5 (N.D. Cal. Apr. 12, 2018) (emphasis added); see also Kris v. Dusseault Fam. Revocable Tr., No. 18-CV-566-LM, 2021 U.S. Dist. LEXIS 57893, at *7, 2021 WL 1162931, at *3 (D.N.H. Feb. 19, 2021), R&R adopted sub nom. Kris v. Dusseault Family Revocable Tr. of 2017, 2021 U.S. Dist. LEXIS 57485, 2021 WL 1162902 (D.N.H. Mar. 25, 2021).  Additionally, under the federal mandamus statute, 28 U.S.C. § 1361, "[f]ederal district courts do not have jurisdiction 'over challenges to state-court decisions in particular cases arising out of judicial

---

[9] Ordering the New Hampshire Attorney General to request stays from the state district courts and municipal police departments would be in the nature of a writ of mandamus.  The same is true for an order directing the prosecutors to request that the state district courts and municipal police departments to stay their hands.

proceedings even if those challenges allege that the state court's action was unconstitutional.'" Van Sickle v. Holloway, 791 F.2d 1431, 1436 (10th Cir. 1986) (quoting D.C. Ct. of App. v. Feldman, 460 U.S. 462, 482 (1983)).  Because Redman seeks to compel the actions of state, not federal, officials, his request falls outside the scope of federal mandamus relief and should therefore be denied.

Redman's allegations similarly fall short of showing an entitlement to preliminary injunctive relief.  In determining whether to grant such relief, a district court must consider four factors, specifically: the movant's likelihood of success on the merits, whether the movant will suffer irreparable harm if the requested injunction is not granted, the hardship to the nonmovant if the injunction is granted, and the effects of the requested injunction on the public interest.  See Shurtleff v. City of Bos., 986 F.3d 78, 85 (1st Cir. 2021) (citation omitted), cert. granted, No. 20-1800 (U.S. Sept. 30, 2021); Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 92 (1st Cir. 2020) (same).  "Among these four factors, '[t]he movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus.'"  Shurtleff, 986 F.3d at 86 (quoting Ryan v. U.S. Immig. & Customs Enf't, 974 F.3d 9, 18 (1st Cir. 2020)).  Redman, however, has not shown that he is likely to succeed on the merits of any of his claims, given the reasons articulated in this R&R.  Additionally, Redman has

failed to name any of the entities from which he seeks relief as defendants in this action. See Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1351 (Fed. Cir. 1998) ("As a general matter, a court may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated." (citing Chase Nat. Bank v. City of Norwalk, 291 U.S. 431, 436–37 (1934))); Norgaard v. United States, No. CV 16-12107-FDS, 2016 WL 6562043, at *2 (D. Mass. Nov. 3, 2016) ("Except in limited circumstances not relevant here, a court may not order injunctive relief as to non-parties to an action.").

Given these deficiencies, the District Judge should deny Redman's motion for mandamus relief without prejudice to his ability to seek mandamus or injunctive relief through a future motion that is properly supported, and in compliance with the Federal Rules of Procedure, should the District Judge decline to adopt this Report and Recommendation, or to the extent such relief might be available in another court.

## V.  <u>Conclusion</u>

For the foregoing reasons, the District Judge should grant the defendants' motion to dismiss (Doc. No. 6), dismiss this case in its entirety, and deny Redman's motion for mandamus relief (Doc. No. 7). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections

within the specified time waives the right to appeal the

district court's order.  See Santos-Santos v. Torres-Centeno,

842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

November 24, 2021

cc:  John Redman, pro se
     Amanda Palmeira, Esq.
     Seth Michael Zoracki, Esq.